UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SANDY JONAS,<br><br>               Plaintiff,<br><br>v.<br><br>BRENT REINKE, JIM WOOLF, LEEANNE HAMILTON, JEFF KIRKMAN, FELICIA FUNK, and JOHN AND JANE DOES 1-10<br><br>               Defendants. | Case No. 4:12-cv-00251-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

       Pending before the Court is Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6). (Dkt. 12.). In addition to allegations that Plaintiff failed to state a claim on which relief may be granted, Defendants' motion also asserts that Plaintiff failed to exhaust administrative remedies under Rule 12(b). (*Id.*)

       The Court finds that the parties have adequately stated the facts and legal arguments in their briefs and that the decisional process would not be significantly aided by oral argument. In the interest of avoiding delay, the Court will decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1.

       The Court will grant in part and deny in part Defendant's Motion to Dismiss.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Plaintiff was part of a group of prisoners at the Pocatello Women's Correctional Center (PWCC) who started a lawsuit by jointly filing a Prisoner Civil Rights Complaint docketed as *Blanc v. Reinke, et al.*, 4:11-cv-00333-BLW, in which they challenged wide-ranging conditions at PWCC, alleging that prison officials and employees violated their constitutional rights and contravened various federal criminal statues. (Case No. 4:11-cv-00333-BLW, Dkt. 3.) Plaintiffs also requested certification as a class action. (*Id*. at Dkt. 4.)

The case was assigned to Magistrate Judge Ronald E. Bush, who conducted an initial review of the Complaint as required by 28 U.S.C. § 1915 and § 1915A. (*Id*. at Dkt. 9.) Judge Bush determined that the Plaintiffs had failed to state a claim on which relief may be granted. He instructed each Plaintiff who wished to proceed to file her own amended complaint, rather than to continue as joint plaintiffs in a single case, and to submit a new application to proceed in forma pauperis. (*Id*. at Dkt. 9, pp. 24-25.) The case was then reassigned to the undersigned District Judge, who independently reviewed the Complaint and agreed with Judge Bush that it failed to state a claim on which relief may be granted. (*Id*. at Dkt. 16, pp. 4-5.)

On May 21, 2012, Plaintiff filed the Complaint in the instant case. (Dkt. 2.) The Complaint raises broad claims under thirty-two categories that implicate nearly every aspect of confinement at PWCC, with titles such as "Medical," "Retaliation," "Overcrowding," "Mass Punishment," and "Fraternization," among others. (*Id*. at 4-9.)

**MEMORANDUM DECISION AND ORDER - 2**

The Court initially reviewed the Complaint pursuant to 28 U.S.C. § 1915 and § 1915A, and on November 20, 2012, entered an Order permitting Plaintiff to proceed with an Eighth Amendment medical claim. (Dkt. 6, p.6.) Plaintiff's claim is limited to her allegations that "prison officials failed to (1) treat a broken thumb, (2) provide her with a reasonable accommodation for her 'photophobia,' and (3) provide hormone therapy after a hysterectomy." (*Id.*)

Plaintiff alleges that she dislocated and broke her thumb on July 24, 2011, but was told that there was "nothing wrong with it." (Dkt. 2, p. 4.) Eventually, a surgical appointment was scheduled, but prison officials failed to take Plaintiff to her appointment, and when it was rescheduled the surgeon had no choice but to fuse the joint, because too much time had passed. (*Id.*) Plaintiff also contends that she was not allowed to wear her sunglasses indoors for photophobia, even though she had a medical memo to do so, which has caused her to lose some of her eyesight. (*Id.* at 2.) Finally, she asserts that medical providers have not allowed her to take hormone replacement medication after she had a hysterectomy, which affects her "mental, emotional, psychological" well-being. (*Id.* at 4.)     On January 22, 2013, Defendants filed their Motion to Dismiss Pursuant to FRCP 12(b)(6). (Dkt. 12.) Defendants argue that Plaintiff failed to exhaust her administrative remedies regarding her allegations as to the medical treatment for her photophobia and the failure to provide hormone therapy. (Dkt. 12-1, pp. 7-8.) As to the claim regarding Plaintiff's broken thumb, Defendants argue that she has failed to allege, and there are no facts to support, that the remaining Defendants (Woolf and Hamilton)

**MEMORANDUM DECISION AND ORDER - 3**

were personally involved in Plaintiff's medical treatment. (*Id*. at 9-11.) In response, Plaintiff contends that there is no administrative process to exhaust because "administration refused to process grievances" and that only Hamilton was "personally involved." (Dkt. 17.)

## FAILURE TO STATE A CLAIM

1.   **Standard**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed.R.Civ.P. 8(a)(2). "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'" *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (9th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court accepts "all facts alleged as true and construes them in the light most favorable to the plaintiff." *County of Santa Clara v. Astra USA, Inc*., 588 F.3d 1237, 1241 n. 1 (9th Cir. 2009).

However, a court must treat a motion to dismiss as a motion for summary judgment if matters outside the pleadings are submitted by the parties and considered by

**MEMORANDUM DECISION AND ORDER - 4**

the court. *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998).

**2.  Discussion**

Defendants argue that Plaintiff's claim regarding his thumb should be dismissed, because there is no evidence or allegations that Defendants Woolf or Hamilton were personally involved in Plaintiff's care and treatment.

Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).  In the Ninth Circuit, the test for deliberate indifference consists of two parts. *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).  First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain.'" *Id*. at 1059 (citing *Estelle*, 429 U.S. at 104).  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. *Id*. at 1060.  The second prong - defendant's response to the need was deliberately indifferent- is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id*.  Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. at 1059.

**MEMORANDUM DECISION AND ORDER - 5**

The Ninth Circuit has long permitted plaintiffs to hold supervisors individually liable in § 1983 suits when culpable action, or inaction, is directly attributed to them. *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011).  In other words, a defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 1207. "A plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury.  The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Id*. (quoting *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991)(en banc)).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others," or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. (quoting *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)).  "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervisor, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208.

Here, Defendants argue that there is no evidence or allegations that Warden Woolf or Deputy Warden Hamilton were personally involved in the treatment of Plaintiff's

**MEMORANDUM DECISION AND ORDER - 6**

thumb injury.  (Dkt. 12-1, pp. 9-11.)  To support their argument, Defendants cite the Complaint and submit the Affidavit of Michelle Davis.  (Dkt. 12-1, p. 10.)  Michelle Davis is the Grievance Coordinator at PWCC.  (Dkt. 12-2, p. 2.)  Attached to her affidavit are various exhibits, including four grievances Plaintiff filed regarding the care and treatment she was provided for her thumb.  (*Id.* at Ex. G-J.)  Defendants argue that these grievances evidence: (1) they were not personally involved in the care and treatment of Plaintiff's thumb injury; (2) they were not personally involved at the administrative level; and (3) they were not aware of Plaintiff's grievances/complaints.  (Dkt. 12-1, pp. 10-11.)  Thus, Defendants conclude that "[w]ithout personal involvement or even knowledge of the incidents alleged, neither Warden Woolf nor Deputy Warden Hamilton may be liable for any of the alleged injury suffered by Plaintiff."   (*Id.*)

Plaintiff responds by admitting that "Woolf was never personally involved in anything at PWCC."  (Dkt. 17.)  As to Hamilton, Plaintiff argues that she was personally involved due to conversations Plaintiff had with her concerning her thumb.  (*Id.*)  Plaintiff proffers information concerning the conversations; however, such was not included in her Complaint.  (*Id.*)

The Court will grant the motion to dismiss as to Defendant Woolf.  As to Defendant Hamilton, given that both parties have submitted matters outside of the pleadings to address whether or not she was personally involved, the Court concludes this issue would be more appropriately heard as a motion for summary judgment.  Accordingly, Defendants' motion to dismiss as to Defendant Hamilton will be denied

**MEMORANDUM DECISION AND ORDER - 7**

concerning the medical treatment and care Plaintiff received for her thumb. However, Defendants may file a motion for summary judgment under Rule 56 on this issue.

To survive summary judgment, Plaintiff will have to demonstrate a genuine dispute as to a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, Plaintiff will have to demonstrate that there is a genuine dispute as to whether Defendant Hamilton was personally deliberately indifferent. Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Therefore, Plaintiff will have to submit an affidavit or declaration in opposition to the motion which: (1) is made on personal knowledge; (2) sets out facts that would be admissible in evidence; and (3) shows that Plaintiff is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If Plaintiff seeks to argue that Defendant Hamilton is personally liable due to the conversations the two had concerning Plaintiff's thumb, Plaintiff needs to set forth in an affidavit the details of these conversations, including dates and times. Plaintiff also needs to show a "purposeful act or failure" by Defendant Hamilton to respond to her pain or medical need and that Defendant Hamilton's alleged indifference caused Plaintiff harm. *See McGuckin v. Smith*, 974 F.2d at 1060.

### FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

1. **Standard**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*, a prisoner is required to

**MEMORANDUM DECISION AND ORDER - 8**

exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

Failure to exhaust is an affirmative defense that is "subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for lack of exhaustion, the Court "may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120. If a prisoner has failed to exhaust his administrative remedies, the appropriate remedy is dismissal without prejudice. *Id.*

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant does so, "the burden shifts to the plaintiff to show that the administrative remedies were unavailable." *Albino v. Baca*, 697 F.3d 1023, 1031 (9th Cir. 2012). Confusing or contradictory information given to a

prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937.

Administrative remedies will be deemed unavailable and exhaustion excused if an inmate shows that the required procedural steps were "not known and unknowable with reasonable effort." *Albino*, 697 F.3d at 1037. A complaint will not be dismissed for failure to exhaust if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if jail staff took any other "affirmative actions" that interfered with an inmate's efforts to exhaust. *Id.* at 1034, 1039. It is not enough that the prisoner was subjectively unaware of proper grievance procedures; that lack of awareness must be "objectively reasonable." *Id.* at 1038.

## 2.  IDOC Grievance Procedure

The Idaho Department of Correction uses a three-step administrative grievance process to address prisoner complaints relating to their incarceration, including those issues which Plaintiff raises in this action. (Dkt. 12-2, pp. 2-3). The prisoner must first submit an offender concern form, then a grievance form, and then file an appeal of the response to the grievance. (*Id.*)

The prisoner begins this process by routing the offender concern form to the staff member most capable of responding to, and if appropriate, resolving the problem. (*Id.* at 3.) If the issue is not resolved at this informal level, then the prisoner may complete a grievance form and must file that grievance within a specific time frame from the incident or problem. (*Id.*) The grievance form must contain specific information regarding the

MEMORANDUM DECISION AND ORDER - 10

nature of the complaint, including the dates, places, names, and the offender must suggest a solution to the issue. (*Id.*) Upon receipt of a grievance, the Grievance Coordinator enters the grievance information into the Corrections Integrated System (CIS), an electronic database used to log grievances and appeals. (*Id.*) The Grievance Coordinator determines if the grievance form is completed correctly and if so, assigns it to the staff member most appropriate to respond to it. (*Id*.) If the form is completed incorrectly, the Grievance Coordinator returns it to the prisoner using the Grievance/Disciplinary Offense Report (DOR) Transmittal Form. (*Id.*)

After the staff member responds to the grievance, the Grievance Coordinator logs the information into the CIS database and then forwards the grievance to a "reviewing authority," who, for health care issues, is usually a medical supervisor. (*Id*. at 4.) The "reviewing authority" must review the prisoner's complaint and the staff member's response and issue a decision denying, modifying or granting the prisoner's suggested solution within a specific period of time. (*Id*.) The Grievance Coordinator logs the reviewing authority's response in the CIS database and forwards the printed grievance and the prisoner's original attachments to the prisoner, and then files a copy of the printed grievance, the original Grievance/Appeal Form and copies of all attachments. (*Id*.)

If the prisoner is dissatisfied with the response to his grievance, he may then file an appeal. (*Id*.) After the Grievance Coordinator receives as appeal, she is required to enter the appeal into the CIS database and forward it to the "appellate authority." (*Id*.) At the PWCC, the appellate authority is the Warden, except as to medical grievances, in which

**MEMORANDUM DECISION AND ORDER - 11**

case the contract medical provider acts as the appellate authority.  (*Id*.)  The appellate authority drafts a response within a specific time of receiving the grievance appeal, and returns it to the Grievance Coordinator, who logs the response in CIS.  (*Id*.)  The Grievance Coordinator then forwards the printed grievance and the prisoner's original attachments to the prisoner, and then files a copy of the printed grievance, the original Grievance/Appeal Form and copies of all attachments.  (*Id*. at 5.)  Upon completion of all three steps, the offender grievance process is exhausted.  (*Id*.)

3. Discussion

Defendants argue that Plaintiff failed to exhaust the IDOC grievance process with respect to her Eighth Amendment claim regarding her photophobia and hormone therapy.  (Dkt. 12-1, p.7.)  The Court will address each argument in turn.

   A.   **Reasonable Accommodation for Photophobia**

To meet their initial burden, Defendants rely upon the Affidavit of Michelle Davis.  (Dkt. 12-2.)  Davis states that from January 1, 2010 to the date of her affidavit (January 22, 2013), Plaintiff did not file a grievance about being allowed to wear glasses due to her photophobia.  (*Id*. at ¶20.)  The only grievance filed by Plaintiff, which refers to photophobia, complains of overly bright lights - no mention of glasses is made.  (*Id*. at Exh. K.)  Plaintiff responds that her administrative remedies could not be exhausted because "administration refuses to process grievances and Plaintiff can proceed no further as a result of the staffs [sic] actions."  (Dkt. 17.)

Although exhaustion is mandatory, an inmate must only exhaust administrative

**MEMORANDUM DECISION AND ORDER - 12**

remedies "as are available." 42 U.S.C. § 1997e(a). Under Ninth Circuit law, exhaustion is excused when "improper screening" of grievances occurs. *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010). *Sapp* established that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under [§ 1997e(a)]." *Id.* at 823.

However, to invoke this "effectively unavailable" exception to exhaustion, "a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening." *Id.* Specifically, the inmate must establish that (1) he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficiently exhausted the claim he brought in court, and (2) prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations. *Id.* at 823-24.

Plaintiff has not made the necessary showing to apply this exception. Although she states that "administration refuses to process grievances and Plaintiff can proceed no further as a result of the staffs [sic] actions," this statement does not demonstrate that she actually submitted, or attempted to submit a grievance (concerning the use of her glasses) that "if pursued through all levels of administrative appeals, would have sufficed to exhaust her claim." *Sapp*, 623 F.3d at 823-24. Nor is there any evidence that prison officials improperly screened a grievance, or had "draconian procedural requirements" such that administrative remedies were "effectively unavailable." *Id.* at 827.

Instead, the evidence indicates that Plaintiff has filed 101 grievances since January

**MEMORANDUM DECISION AND ORDER - 13**

4, 2010, of which, 82 grievances were granted/modified, denied or pending. (Dkt. 12-2, ¶12, Exh. D.) The 19 grievances which were returned without processing do not relate to the current claims before the Court. (*Id*.) However, Plaintiff had the opportunity to correct the returned grievances and to re-submit them for processing. (*Id*. at Exh. A, p. 5, Exh. B pp. 9-10, Exh. C, pp. 9-10.) Plaintiff did not do so. Plaintiff's frequent use of the grievance system indicates that she is aware of its procedures. Her allegation that "staff refused" to process her grievances is without merit. Plaintiff makes no other argument concerning her photophobia claim. Accordingly, the Court will dismiss this claim.

### B.     Hormone Therapy Medications

Davis provides that Plaintiff submitted two grievances regarding her medications for non-chronic conditions, which included Premarin - an estrogen supplement. (Dkt. 12-2, ¶¶ 13-14, Exh. E and F.) However, Defendants contend that Plaintiff's grievances only relate to whether her conditions are "chronic", (and subject to medical co-pays), rather than whether the medications are unavailable. (Dkt 12-1, p. 8; Dkt 12-2 at Exh. E and F.) Because Plaintiff has filed no grievance complaining she has been denied hormone therapy medications, Defendants assert that she has failed to exhaust the administrative process as to this allegation.

Plaintiff responds by contending that the following grievance exhausted her claim:

> Denial of medical services. READ CONCERN! I put in to see Dr Dyer & was refused cause of "COST" per Malooly. Malooly is not licensed as an OB/GYN & Dr. Dyer is. Malooly is contradicting Dr. Dyer, who I have not seen since 2005. My concern was sent to Thomas who I guess is too damn lazy to answer it. Medical is one embezzlement scam, the FOR PROFIT bullshit. Seem to me over

**MEMORANDUM DECISION AND ORDER - 14**

> $22 million is a nice chunk of change in the po . . .

(Dkt. 17; Dkt. 12-2, Exh. D, Grievance #110000248.)  Plaintiff states that she requested to see Dr. Dyer when her hormone medications were threatened, but her request was denied due to cost.  (Dkt. 17.)  She then alleges that the medications were taken away and that she was told she would now have to pay for them.  (*Id*.)

Plaintiff has not filed a grievance for the claim in her complaint that she is denied hormone therapy medication.  The grievances only concern costs associated with the medication and denials to see a specialist.  Consequently, Plaintiff has failed to exhaust her administrative remedies regarding this claim as well.  The Court will dismiss the claim that Plaintiff is denied hormone therapy medication.

## ORDER

**IT IS ORDERED:**

Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6) (Dkt. 12) is GRANTED IN PART and DENIED IN PART, as set forth above.  All claims against Defendant Woolf are DISMISSED with prejudice.



DATED:  **August 1, 2013**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 15**